March 12, 1990

CLERK OF COURT
SUPREME COURT. CNMI
FILED

90 MAR 12 P 4: 41

BY: Susan Ng.

# IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOSE P. MAFNAS, Personally and as President of the Seventh Commonwealth Senate, | APPEAL NO. 90-004<br>CIVIL ACTION NO. 90-031 |
| Plaintiff/Appellant, | |
| vs. | OPINION |
| ELOY INOS, in his capacity as Director of the Department of Finance, JOSEPH INOS, JESUS R. SABLAN, EDWARD U. MARATITA, FRANCISCO M. BORJA, and HENRY DLG. SAN NICOLAS, in their capacity as members-elect of the Seventh Commonwealth Senate, FELIPE Q. ATALIG and ABRAHAM TAISACAN, | |
| Defendants/Appellees. | |

Argued and submitted on March 2, 1990.

Counsel for Appellant: Monessa G. Lujan

Counsel for Appellee: Rexford C. Kosack

BEFORE: Dela Cruz, Chief Justice; Villagomez and Borja, Associate Justices.

VILLAGOMEZ, Justice:

On January 8, 1990, at the organizational session of the Senate of the Seventh Commonwealth Legislature, (hereinafter "seventh senate") a dispute arose as to who should be the presiding officer of the opening session. Senator Herman R.

102

Guerrero asserted that he should be the presiding officer in that, among the hold-over senators, he had served the most consecutive terms as a senator. Likewise, Senator-elect Joseph S. Inos asserted that he should preside in that he had served as a senator in every Commonwealth Legislature. Senator Guerrero did not serve one term. Both senators referred to the rules of the previous or sixth senate as a basis for their assertions.

The two senators attempted to preside over the session at the same time in the same senate chamber. Senator Inos was then physically removed from the dais and was physically prevented from presiding over the session. As a result, Senator Inos announced that the senate session that he would preside over would be conducted in the office of Senator Paul A. Manglona. At that point, six senators gathered in the office of Senator Manglona and three senators stayed in the senate chamber.

Two factions of the senate were created as a result. One faction includes three members--Herman R. Guerrero, Jose P. Mafnas, and Juan S. Torres. The other faction includes six members--Joseph S. Inos, Paul A. Manglona, Jesus R. Sablan, Edward U. Maratita, Francisco M. Borja, and Henry Dlg. San Nicolas. The faction with three senators elected Jose P. Mafnas as president of the senate. The faction with six senators elected Joseph S. Inos as president of the senate.

Since there were two separate bodies, each claiming to

103

be the legitimate Commonwealth Senate, the lower house of the legislature and the executive branch of the Government of the Northern Marianas could not work with the senate and the senate could not function.

Senator Mafnas, in an attempt to rectify the dilemma, filed a complaint with the Superior Court asking that he be declared the legitimate president of the senate. Senator Inos filed an answer requesting that he be declared the legitimate president of the senate.

On January 22, 1990, the Superior Court issued a declaratory judgment declaring Senator Inos, not Senator Mafnas, to be the president of the senate.

Senator Mafnas then filed a Petition for Writ of Mandamus with this Court. We denied the petition and, thereafter, Senator Mafnas brought this appeal.

The issue brought before us is whether the Superior Court made an error of law in declaring that Senator Inos is the legitimate president of the senate and not Senator Mafnas.

The Superior Court found and concluded that, first, the rules of the sixth senate did not bind the seventh senate and that the same rules, if applied to the seventh senate, would be unconstitutional. Second, that members of the senate during the organizational session include holdover-members and those members-elect who have received their certificate of election. Third, that senators-elect who have election contests pending against them have the same rights and

104

privileges of office that are accorded the other senators; they can participate and vote in the organizational session. Fourth, that for the senate to act legally, it must have a quorum -- that being a majority or at least five out of the nine senators. Fifth, that the Inos faction held a senate session with six senators and the Mafnas faction held a senate session with three senators. Therefore, the Inos faction had a quorum, was legally organized, and legally elected Inos as president.

Senator Mafnas acted wisely in bringing the matter before the Superior Court. Absent expeditious resolution of the dilemma, the Commonwealth Government would remain crippled. No laws could be passed and the new Governor's executive appointments could not be acted upon.

 The Superior Court was correct in finding that it had jurisdiction to entertain this matter and that the controversy was justiciable. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691 (1962); Vander Jagt v. O'Neill, 699 F.2d 1166 (D.C. Cir. 1983).

 We begin our analysis by examining the Superior Court's conclusion that the rules of the sixth senate do not apply to the seventh senate.[1/] The Superior Court is correct in

---

[1/] The Superior Court's characterization of the senate rules as, "... merely promulgations of internal rules ...." and having no status as law, is misleading and denigrates such rules. Mafnas v. Inos, Civil No. 90-31 (NMI Superior Ct., Jan. 22, 1990), pg. 27 n.16. Once promulgated, such rules are not only binding and enforceable, but a senate member may be expelled for violating the rules. NMI Constitution, Art. II, § 14(a).

105

concluding that the Commonwealth Legislature is not continuous indefinitely but is a continuous body only for two years, after which it is adjourned _sine_ _die_ and replaced by a new legislature. NMI Constitution, Article II, § 13. The sixth senate adjourned _sine_ _die_ on January 5, 1990, and the seventh senate was constitutionally required to organize on January 8, 1990, the second Monday of January in the year following the regular general election. _Id._

The Superior Court is also correct in concluding that the rules of the sixth senate did not apply to the seventh senate because they did not adopt it. NMI Constitution, Article II, § 14(b).[2] That being the case, there is no need to go into the constitutionality of those rules.[3] They are irrelevant unless properly adopted by the seventh senate. If properly adopted, they become the rules of the seventh senate.

Whether the rules of the sixth senate were properly adopted by the seventh senate is a question of fact for the trial court. The Superior Court has found that the seventh

---

[2] This provision requires each house, at its organizational meeting, to promulgate rules of procedure.

[3] The Superior Court is correct in concluding that the sixth senate cannot require the seventh senate to adopt its rules as temporary rules of the seventh senate. Constitution Article II, § 14(b). Also, the rules of the sixth senate cannot select for the seventh senate its organizational presiding officer, especially if the person selected is not from among the members of the seventh senate. _Id._ But if the same rules will select from among the members of the seventh senate, then a promulgation of those rules by the seventh senate will select the presiding officer as provided therein.

senate did not adopt the rules of the sixth senate. This finding was not assigned as error in this appeal, and the parties thus did not address the issue of whether the finding was contrary to the evidence and clearly erroneous. MPLT v. NMI Government, 2 CR 870 (D.NMI App. Div., 1986); EDLF v. Pangelinan, 2 CR 451 (D.NMI App. Div., 1986). Therefore, we will not disturb that finding.

Whether the sixth senate adopted the rules of the fifth senate and the fifth adopted the rules of the fourth, and on down the line, we do not know. But even if they did, that alone would not preclude the seventh senate from adopting its own different rules or from refusing to adopt the rules of the sixth senate. Each house is constitutionally mandated to promulgate its own rules of procedure. NMI Constitution, Article II, § 14(b).

The Superior Court is correct in not applying the rules of the sixth senate in reaching its decision.

The next question the Superior Court addressed is who are "members" of the senate for organizational purposes. It concluded that all nine members could participate in organizing the senate, whether they were hold-overs, uncontested members-elect, or contested members-elect.

Although the NMI Constitution does not specifically define the word "members", it does provide us with the answer.

First, we look at Section 14(b) of Article II, which states, in part, "Each house of the legislature shall choose

its presiding officer from among its members...." We interpret this language to mean that the presiding officer shall be selected from among all the members, and not just the hold-over members and uncontested members-elect.

Second, we go to Section 13 of Article II, which states in part, "The legislature shall meet for organizational purposes on the second Monday of January in the year following the regular general election at which members of the legislature are elected...." The plain meaning of the word "legislature" is the entire legislature and not just part of it.

Third, NMI Constitution Article VIII, § 4 provides that, "Officers elected at the regular general election shall take office on the second Monday of January of the year following the year in which the election was held." This includes members of the legislature. Constitutional Analysis, pg. 127.[4]

Fourth, with respect to the lower house, "members" means newly-elected members only since there are no hold-over members. We find no basis for interpreting the word "members" differently when applied to the senate as when applied to the lower house.

---

[4] Under Article II, § 2(c), the Analysis of the Constitution provides that a senator-elect who does not meet the constitutional qualification to become a senator may not take office on this date. None of the senators-elect have been contested based on their qualifications. Therefore, this issue is not before us.

Fifth, under the Constitution, the senate has only three hold-overs every other term. Yet, the legislature provides in 1 CMC § 6423 that the presiding officer shall appoint a credentials committee consisting of five members. Therefore, the term "members" necessarily includes members-elect.

To conclude that the word "members", as used in our Constitution and laws, when referring to senate members, means only hold-over members, for organizational purposes, would contradict the meaning of the constitutional and statutory provisions cited above. Lake County v. Rollins, 130 U.S. 662, 32 L.Ed. 1060, 9 S.Ct. 651 (1890).

Therefore, we conclude that the Superior Court is correct in holding that the term "members of the senate" includes all nine members for organizational purposes.

We have examined the rationales set forth in Werts v. Rogers, (NJ) 28 A. 726 (1894) and In re Gunn, (Kan.) 32 P. 470 (1893), which were followed by the Superior Court in reaching its decision. The conclusions in those two cases are consistent with the language and intent of our Constitution. We approve the application of those rationales by the Superior Court in this case.

The Superior Court concluded its analysis by applying common law rules of parliamentary procedure under which a quorum would be necessary for the senate to act. Under common law, a majority of the members constitutes a quorum. 59 Am.Jur. 2d, Parliamentary Law, § 7. The word "majority" means a number which is greater than half of the total

membership. <u>Black's Law Dictionary</u>, 860 (5th Ed. 1979).

In applying the common law rule, the Superior Court logically concluded that it was the Inos faction which acted legally in that it consisted of six senate members, constituting a quorum.

In the absence of the rules of the sixth senate, we examined the NMI Constitution and statutes, but did not find any provision dealing with the procedure for electing the senate president and organizing the senate.[5] Therefore, under 7 CMC § 3401, the trial court was correct in applying common law rules of parliamentary procedure.

We have considered appellant's contentions that the Superior Court Judge committed errors of law by not disqualifying himself in this case, by advancing and consolidating the action on the merits, and by entering a declaratory judgment for the defendant, rather than simply dismissing the plaintiff's complaint. We find no reversible error as to any of those contentions.[6]

The fact that the trial judge administered the oath in the senate is not a legal basis for him to have been disqualified in this case. Furthermore, there were no other

---

[5] In view of this, the legislature may wish to enact a law setting forth the procedure for selecting a presiding officer for the organizational session of both houses and for their organization.

[6] We have considered all other contentions, such as the unclean hands argument, and find no reversible error in connection therewith.

110

available judges on island. Finally, the case presented an urgent matter and the judge was correct in resorting to the rule of necessity.

Even if we were to remand this case to allow appellant additional time to prepare and present evidence on senate tradition and prior practices, it would make no difference. The seventh senate has the constitutional power not to follow previous practices with respect to adopting the rules of the previous senate.

The Superior Court had the discretion not only to consolidate the merits and the procedural action, but also to grant the relief sought by the defendant. In this case the defendant prayed in his answer that he be declared the president of the senate. Considering the urgency and circumstances of this case, we find no abuse of discretion. There is sufficient evidence in the record to support the Superior Court's finding that Inos was legally elected president.

Based on the above analysis, we AFFIRM the declaratory judgment of the Superior Court.

Dated this ___12th___ day of _____March_____, 1990.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice